```
                    DISTRICT COURT OF THE VIRGIN ISLANDS
                    DIVISION OF ST. THOMAS AND ST. JOHN

                                        )
JULIETTE CREQUE SCOBIE,                 )
                                        )
             Plaintiff,                 )
                                        )    Civil No. 2018-33
             v.                         )
                                        )
FLAGSTAR BANK, FSB, ZURICH in           )
NORTH AMERICA, STEADFAST                )
INSURANCE COMPANY, and PROCTOR          )
FINANCIAL, INC.,                        )
                                        )
             Defendant.                 )
                                        )
```

**ATTORNEYS:**

**Carol Ann Rich**
**Malorie Diaz**
Dudley Rich LLP
St. Thomas, VI
  *For Juliette Creque Scobie,*

**A.J. Stone , III**
**Adam Nicholas Marinelli**
Bolt Nagi PC
St. Thomas, VI
  *For Flagstar Bank, FSB,*

**Robert C. Grimal**
Lydecker Diaz
Jersey City, NJ
**Carl A Beckstedt , III**
**Michael A Rogers**
**Robert J. Kuczynski**
Beckstedt & Associates
Christiansted, VI
  *For Zurich in North America and Steadfast Insurance Company,*

**Jason P. Stearns**
**Lawrence P. Ingram**
Freeborn & Peters LLP
Tampa, FL
**Gregory H. Hodges**
Dudley Topper & Feuerzeig
St. Thomas, VI
      *For Proctor Financial Inc.*

## ORDER

**GÓMEZ, J.**

Before the Court is the motion of Zurich in North America and Steadfast Insurance Company to dismiss the complaint filed in the above captioned matter.

## FACTUAL AND PROCEDURAL HISTORY

In or about May 11, 2011, Juliette Creque Scobie ("Scobie") and her mother, Margaret Louise Creque (collectively the "Creques"), borrowed $500,000 (the "Loan") from Flagstar Bank, FSB ("Flagstar"). *See* Complaint at 3, ECF No. 1. The Loan was evidenced by a May 11, 2011, note (the "Note"). *See* Complaint Exhibit 2 at 2, ECF No. 1-2. To secure payment of the Loan, the Creques executed a mortgage over their house (the "Property") in favor of Flagstar. To comply with the terms of the mortgage, the Creques were required to insure the Property against certain hazards. *See* Complaint Exhibit 2 at 5, ECF No. 1-2. To that end, the Creques secured a hazard insurance policy for the Property.

During 2017, the Creques' private hazard insurance policy for the Property came due for renewal. The Creques failed to provide proof of renewed hazard insurance to Flagstar. Subsequently, Flagstar purchased an insurance policy (the "Policy") for the full replacement cost of the Property. Flagstar and Proctor Financial, Inc. ("Proctor") procured the Policy from Zurich in North America ("Zurich"). Zurich placed the Policy with Steadfast Insurance Company ("Steadfast"). Flagstar charged the premium for the Policy to the Creques' escrow account. Flagstar sent the Creques a notice of hazard insurance which states that coverage effective from July 27, 2017, to July 27, 2018, was placed on the Property.

On September 6, 2017, the Property was damaged by Hurricane Irma.

On November 2, 2017, Scobie submitted notice of a claim for loss to Flagstar.

Between November, 2017, and June, 2018, Scobie communicated with Flagstar, Proctor, and Zurich in an attempt to resolve her insurance claim on the Property.

On June 4, 2018, Scobie filed a complaint against Flagstar, Zurich, Steadfast, and Proctor. The complaint alleges four counts. Count One seeks a declaratory judgment

against Flagstar, Zurich, Steadfast, and Proctor. Scobie seeks a declaration as to her rights under the Policy. Count Two asserts a claim against Flagstar for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"). Count Three asserts a claim against Flagstar, Zurich, Steadfast, and Proctor for breach of contract. Count Four asserts a claim against Flagstar for fraudulent misrepresentation and concealment.

On August 3, 2018, Zurich and Steadfast filed a motion to dismiss the complaint for failure to state a claim (the "motion to dismiss").

Scobie has filed an opposition to the motion to dismiss.

## **DISCUSSION**

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff*." In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party*. Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). "In deciding a Rule 12(b)(6) motion, a court must consider

only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) cert. denied, 562 U.S. 1271, 131 S. Ct. 1607, 179 L. Ed. 2d 501.

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

The Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual

pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "'merely consistent with' a defendant's liability, … 'stops short of the line between possibility and plausibility of "entitlement of relief."'" *Id.* (citing *Twombly*, 550 U.S. at 557).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679).

## ANALYSIS

### A. Standing

Zurich and Steadfast argue that Scobie does not have standing to sue on the Policy procured by Flagstar because

Scobie is not an intended third-party beneficiary to the Policy.

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The "prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth*, 422 U.S. at 509. "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499.

As a general rule, only parties to a contract or third party beneficiaries to a contract may sue to enforce the contract. *See Kersey v. Becton Dickinson & Co.*, 433 F. App'x 105, 108 (3d Cir. 2011); *see also Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 555 (2012); *Fabien v. Fabien*, 2018 V.I. Supreme LEXIS 28, at *25 (Sep. 21, 2018) (citing *Campbell v. Parkway Surgery Ctr., LLC*, 158 Idaho 957, 354 P.3d 1172, 1178 (Idaho 2015)). Generally, a

federal court sitting in diversity applies local law to determine whether a party is a third-party beneficiary to a contract. *See, e.g., Miree v. DeKalb County*, 433 U.S. 25, 28-29 (1977) (holding that state law determined standing as a third party beneficiary of a federal contract where the federal interests involved did not necessitate the application of federal common law); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168 (3d Cir. 2008) (applying state law in diversity case to determine whether plaintiff was third party beneficiary of contract and thus had standing to bring breach of contract claim).

> To prove intended beneficiary status, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. [When reviewing such a claim, the court] examine[s] the terms of the contract as a whole, giving them their ordinary meaning. The contract need not name a beneficiary specifically or individually in the contract; instead, it can specify a class clearly intended by the parties to benefit from the contract.

*Petrus*, 56 V.I. at 555-56 (quoting *GECCMC 2005-C1 Plummer St. Office Ltd. Partnership v. JPMorgan Case Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012) (internal citations and quotation marks omitted)).

In *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548 (2012), Allison Petrus and Surtep Enterprises, Inc.

(collectively "Surtep") leased land on St. Thomas from the Government of the Virgin Islands ("GVI"). *Petrus*, 56 V.I. at 549. Paragraph eleven of the lease between Surtep and the GVI provided that

> [t]he Tenant shall not do nor permit anything to be done which will interfere with the free access and passage of others to space adjacent to the premises or in any streets, ways and walks near the premises, nor interfere with the free access to the shoreline by the public.

*Id.* at 555. During development of the leased property, Surtep blocked access to an adjacent property owned by Queen Charlotte Hotel Corporation ("Queen Charlotte"). *Id.* at 550. Queen Charlotte brought an action against Surtep in the Virgin Islands Superior Court seeking injunctive relief, declaratory relief, and damages. *Id.* The Superior Court granted a preliminary injunction. *Id.* Surtep appealed, arguing that Queen Charlotte could not show a reasonable probability of success on the merits that it was a third party intended beneficiary to the lease between Surtep and the GVI. *Id.* at 554-55.

The Virgin Islands Supreme Court affirmed. *Id.* at 550. The Virgin Islands Supreme Court explained that

> Queen Charlotte is an intended beneficiary under paragraph eleven of the Surtep/Government lease. By the plain language of paragraph eleven, Surtep promised that it would not "restrict access" to "space adjacent" to its leased premises. The

> benefit conferred on the owners and tenants of the "space adjacent" to the leased premises is not merely incidental to the promise; rather, it is the main thrust of the promise. Thus, this class of individuals, adjacent space owners, are "clearly intended by the parties to benefit from the contract." Queen Charlotte's property . . ., the gate of which was blocked by Surtep's mound of dirt, is directly adjacent to Surtep's leased premises . . . Therefore, the Superior Court correctly found that Queen Charlotte had a reasonable likelihood of success of showing that it is an intended beneficiary of Surtep's promise not to restrict the access to spaces adjacent to its leased premises.

*Petrus*, 56 V.I. at 556-57 (citations omitted).

Here, Scobie alleges that she is the mortgagor and sole owner of the Property. *See* Complaint at 11, ECF No. 1. Additionally, Scobie alleges that the Policy covers the full replacement cost of the Property--more than four times the unpaid mortgage balance. *Id.* at 4. Scobie also alleges that "Flagstar is obligated under the terms of the Mortgage . . . to provide the mortgagor with notice of the receipt of insurance proceeds, and to cooperate with the mortgagor in using the proceeds for the repair and restoration of the Mortgaged Property, absent an agreement to the contrary." *Id.* at 10-11. These allegations, taken as true, demonstrate that a key benefit of the Policy, the repair and restoration of the Property, inures to Scobie. Thus, Scobie's interest is not merely incidental to the Policy, but a central part of the Policy's coverage. Thus, Scobie

has standing to sue on the Policy as an intended third party beneficiary. *Cf. Hall v. Associated Int'l Ins. Co.*, 494 F. App'x 902, 905 (10th Cir. 2012) (finding that the property owner and mortgagor was not a third party beneficiary to a forced-placed insurance policy because "the policy was purchased by the bank to protect its interest in Mr. Hall's property and any losses under the policy would be payable to the bank").

### B. Breach of Contract

Zurich and Steadfast argue that Scobie did not adequately plead a breach a contract claim against Zurich and Steadfast. Zurich also argues that Scobie did not adequately plead any causes of action against Zurich because Zurich is not a party to the Policy.

To state a claim for breach of contract, Scobie must allege: "(1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 620 (2017).

In *Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016), Michael Earl Davis ("Davis") executed a mortgage on his house (the "mortgaged property") in favor of BNC Mortgage, Inc. ("BNC"). *Davis*, 824 F.3d at 338. Several years later, Wells Fargo, claiming to be the assignee of the mortgage,

locked Davis out of the mortgaged property. Several weeks later, Wells Fargo also initiated a foreclosure action against Davis. *Id.* at 338-39. Several months after the foreclosure action commenced, Davis was placed on active duty in the United States Army. *Id.* at 339.

While Davis was away, Wells Fargo obtained an insurance policy on the mortgaged property with the insurance carrier Assurant, Inc. ("Assurant").[1] *Id.* Subsequently, Wells Fargo discovered a water leak that was damaging the mortgaged property. *Id.* An adjuster examined the mortgaged property and filed a report estimating that repairs would cost $817. *Id.* Wells Fargo settled the claim for $317--$817 minus the $500 deductible. *Id.* Wells Fargo kept the insurance proceeds, but did not fix the leak. *Id.* Nearly a year later, Davis received a notice stating that the mortgaged property had been designated unsafe due to a partially collapsed wall. *Id.* The notice directed Davis to make all necessary repairs or take down the wall within 30 days. *Id.* at 339-40. Davis filed a claim with Assurant for the property damage. At the time, Davis was unaware that Wells Fargo had already settled a claim for the roof leak.

---

[1] The identity of the carrier was in dispute in *Davis*. That dispute does not affect the Court's analysis.

*Id.* at 340. Assurant denied his claim. *Id.* Subsequently, Davis sued Wells Fargo and Assurant, asserting claims against Assurant including breach of contract. *Id.* at 340. Assurant moved to dismiss under Fed. R. Civ. P. 12. *Id.* The district court dismissed Davis's claims against Assurant. *Id.* at 340-41. Davis appealed. *Id.* at 341.

The Third Circuit vacated in part, finding that Davis's breach of contract claim was adequately pled. *Id.* at 351. First, the Third Circuit noted that to adequately plead a claim for breach of contract, "Davis must allege facts giving rise to a reasonable inference that discovery will reveal evidence that 'there was a contract, [Assurant] breached it, and [he] suffered damages from the breach.'" *Id.* at 351. (alteration in original) (citations omitted). The Third Circuit explained that

> Davis alleges that he had an insurance contract with Assurant and that Assurant breached the contract by failing to "adequately investigate and pay the roof leak claim . . . which led to and caused the back wall of [Davis's] property to deteriorate and collapse." . . . Further, there are at least two integral documents attached as exhibits to the amended complaint — the letters settling the first insurance claim and denying Davis's second claim — indicating that an insurance contract existed between Davis and an insurer using letterhead bearing the names of both "American Security Insurance Company" and "ASSURANT Specialty Property." Thus, Assurant's name appeared, in bolded font, at the top of the letter denying

>      Davis's insurance claim. Viewing the allegations of
>      the complaint and integral documents in the light
>      most favorable to Davis — and ignoring the facts
>      set out in Assurant's declaration — we cannot say
>      that those documents fail to "raise a reasonable
>      expectation that discovery will uncover proof" that
>      a contract existed between Davis and Assurant, that
>      Assurant breached the contract, and that it thereby
>      caused damage to Davis's Property.

*Davis*, 824 F.3d at 351 (citations omitted). *Davis* is instructive here.

When assessing a motion to dismiss, a court is permitted to consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) cert. denied, 562 U.S. 1271 (2011). In her complaint, Scobie alleges that: (1) the Policy exists; (2) Zurich and Steadfast have a duty under the Policy to adjust and settle Scobie's claim of loss fairly; (3) the insured amount under the Policy is $1,315,200, *see* Complaint at 2, ECF No. 1; (4) the estimated loss, prepared by a licensed public adjuster hired by Scobie, is $1,150,561.48, *see id.* at 3; (5) Zurich and Steadfast have paid only $196,000 to Flagstar, *see id.* at 7; and (6) Scobie has been unable to repair and restore the Property without receipt of the full insurance

proceeds. Of course, the Court is not limited to those allegations. Indeed, Scobie's claims flow directly from obligations contained in the Policy. That document is attached to the complaint. Thus, it is permissible to consider the Policy at this stage.

The Policy provides that "[i]n the event of loss or damage covered by this policy . . . we will either: (1) [p]ay the value of the lost or damaged property; (2) [p]ay the cost of repairing or replacing the lost or damaged property, . . .; or (3) [r]epair, rebuild or replace the property with other property of like kind and quality." *See* Complaint Exhibit 10 at 17, ECF No. 1-10. The Policy additionally provides that "[t]he words 'we', 'us' and 'our' refer to the company providing this insurance." *See id.* at 14.

Steadfast is mentioned only once in the 75-page Policy as the company providing the insurance. *See* Complaint Exhibit 10 at 9, ECF No. 1-10. Otherwise, Zurich's name and logo appear at the top of each section of the Policy. *See* Complaint Exhibit 10, ECF No. 1-10; Complaint Exhibit 11, ECF No. 1-11. Significantly, the Policy provides that, should the insured party "require additional information or assistance in resolving a complaint," the insured party

should call or write to Zurich with "policy or claim number ready." *See id.* at 11. The policy is signed by three distinct individuals identified only as "Authorized Representative," *see* Complaint Exhibit 10 at 9, ECF No. 1-10, "President," *see id.* at 13, and "Corporate Secretary," *see id.* There is nothing to indicate which company such individuals represent.

It is unclear whether, standing alone, the presence of Zurich's name and logo on the Policy and the provision directing insured parties to call or write to Zurich for assistance in resolving a complaint would support an inference that Zurich is a party to the Policy. The Court need not reach that issue as those references do not stand alone. Significantly, the complaint contains several allegations that also support this inference. Scobie alleges that Zurich has controlled every interaction with Scobie in this matter. Specifically, Scobie alleges that an attorney made contact with her "on behalf of Zurich . . . related to an insurance claim made for" the Property. *See* Complaint at 7, ECF No. 1. Additionally, Scobie alleges that Zurich agreed to cooperate with Scobie and her public adjuster by retaining a licensed Virgin Islands contractor to reinspect the Property. *Id.* at 8. Scobie alleges that

the retained contractor, Impact Construction Inc. ("Impact"), performed an inspection for Zurich on April 27, 2018. *Id.* Scobie also alleges that, as of June 1, 2018, Zurich has refused to provide a copy of Impact's inspection report, or to engage in good faith communications to resolve Scobie's claim. *Id.*

While a different outcome may be warranted at the summary judgment stage, taking these allegations as true and making all reasonable inferences in Scobie's favor, the Court concludes that Scobie has sufficiently alleged a breach of contract claim under the Policy against both Zurich and Steadfast.

### C. Declaratory Relief

Zurich and Steadfast argue that Scobie did not adequately plead a cause of action for declaratory relief because Scobie fails to identify an actual controversy under the Policy.

A party may seek declaratory relief in a federal court pursuant to the Federal Declaratory Judgment Act. The Federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking

such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also* 48 U.S.C. § 1612(a) (stating that District Court of the Virgin Islands shall have the jurisdiction of "a District Court of the United States"). The Federal Declaratory Judgment Act is limited by Article III of the Constitution which "confines jurisdiction of the federal courts to actual 'cases and controversies.'" *Brown v. Phila. Mun. Court*, 47 Fed. App'x 129, 130 (3d Cir. 2002).

Here it is clear there is an actual controversy over Scobie's rights under the Policy and the amount of insurance proceeds due under the Policy. Thus, Scobie may seek declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

The premises considered, it is hereby

**ORDERED** that the motion of Zurich and Steadfast to dismiss, ECF No. 32, is **DENIED**.

S\_____
**Curtis V. Gómez**
**District Judge**